IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF Maryland

M.T.V
~~[redacted]~~, a minor,

by his Guardian, Laura Nieto,

9297 Mt. Pisgah Rd

Silver Spring, MD 20903

    Plaintiffs,

v.

Civil Action No.: DKC 1 0 cv 1172

Jerry D. WEAST (officially as),

Superintendent, Montgomery County Public Schools,

and Montgomery County Board of Education,

850 Hungerford Drive

Rockville, MD 20850

    Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Preliminary Statement**

1. This is an action for Declaratory Judgment and Injunctive Relief directing Defendants Montgomery County Public Schools ("MCPS") and Montgomery County Board of Education ("MCBE") to provide Plaintiff M.T.V. ~~[redacted]~~ with appropriate speech and language services necessary for him to receive a Free and Appropriate Public Education ("FAPE"), or alternatively, to place MTV ~~[redacted]~~ in a non-public school where he can receive appropriate speech and language services necessary for him to receive FAPE, as required under the **Individuals** with **Disabilities Education Act** ("IDEA"), 20 U.S.C. §§. 1400 et. seq., and for Plaintiffs' reasonable attorney's fees and costs, including the fees and costs of this action.

## Jurisdiction

2. This Court has jurisdiction over this matter pursuant to IDEA, 20 U.S.C. §§ 1400-1461; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 2 U.S.C §§ 794; 42 U.S.C. §§ 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343. Declaratory Relief is authorized by 28 U.S.C. §§ 2201 and 2202. This Court has pendent jurisdiction pursuant to MD. CODE ANN. EDUC. §§ 8-401 *et seq.*, (1996). Plaintiffs have exhausted their administrative remedies and appeal to this Court from a decision of an Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings, MSDE-MONT-OT-09-27709 (January 14, 2010).

## Parties

3. M.T.V. [redacted] is an English-only speaking six year old student with an educational disability, who is eligible to receive special education and related speech language services, and who at all times relevant to this action has resided in Montgomery County, Maryland. His great-aunt and Guardian, Laura Nieto, brings this action on M.T.V. [redacted] behalf and in her own right. Plaintiff Laura Nieto is a 68 year old native of Ecuador and a U.S. Citizen, and who at all times relevant to this action has resided in Montgomery County, Maryland.

4. Jerry D. Weast is the Superintendent of MCPS and, as such, is the public official charged with the responsibility for ensuring that MCPS complies with federal law as to the education of disabled children. He is sued in his official capacity.

5. The MCBE is a local educational agency as defined by 20 U.S.C. §§ 1401, and, as such, receives financial assistance from the United States Department of Education. The MCBE is responsible for complying with federal law with respect to the provision of a FAPE to each disabled child in Montgomery County.

## Factual Allegations

6. M.T.V. [redacted] is more than six years old and was born on August 28, 2003.

7. M.T.V. [redacted] has a significant speech disability, particularly with respect to articulation, and speaks like a child half his age. M.T.V. [redacted] has also been diagnosed with Attention Hyperactivity Disorder ("ADHD").

8. On May 31, 2007, when M.T.V. [redacted] was almost four years old, the Montgomery County Child Find Preschool Screening Clinic evaluated M.T.V. [redacted] and determined that educational, speech language and bi-lingual assessments were necessary.

Plaintiff Laura Nieto met with MCPS Child Find official Valerie Mulloon after the evaluation. Although Plaintiff Laura Nieto advised Valerie Mulloon that Michael was not "bi-lingual" because he didn't speak Spanish, Valerie Mulloon stated that it "wouldn't hurt" to conduct a bi-lingual assessment or to provide [M.T.V.] with ESOL instruction during his pre-Kindergarten year from 2007-08.

9. Following the assessments in July, 2003, MCPS convened an IEP meeting at Broad Acres Elementary School, Silver Spring, Maryland, on October 2, 2007. Since the IEP meeting took place after the commencement of the 2007-08 school year and more than 90 days from the Child Find Preschool Screening Clinic evaluation, MCPS violated Plaintiffs' procedural rights under COMAR 13A.05.01.06A.

10. Several days prior to the October 2nd IEP Meeting, MCPS's speech language pathologist at Broad Acres, Laura Fuentes, advised Plaintiff Laura Nieto that, given the severity of [M.T.V.]'s speech disability, she believed [M.T.V.] should receive more than the 45 minutes of weekly small group (3:1 student-teacher ratio) speech language services that he was receiving. Based on Laura Fuentes' representations, Plaintiff Laura Nieto believed that her opinion would be raised at the October 2nd IEP Meeting.

11. During the October 2nd IEP Meeting, when Plaintiff Laura Nieto stated that she wanted her nephew, Jose Sierra, to participate in the IEP meeting by telephone, MCPS employee and Broad Acres Principal, Michael Bayewitz, stated that Jose Sierra's involvement in the IEP meeting was unnecessary, effectively discouraging, dissuading and denying Plaintiffs' right to have Jose Sierra present for the IEP Meeting.

12. The October 2nd MCPS IEP team determined that [M.T.V.] was "delayed" in speech. Despite Laura Fuentes' previous representations to Plaintiff Laura Nieto that 45 minutes of weekly small group speech language services was insufficient to address the severity of [M.T.V.]'s speech disability, the Bayewitz-led IEP Team (which included Laura Fuentes) determined that 45 minutes was sufficient and also determined that [M.T.V.] should receive weekly instruction in ESOL, an English program for Student-Speakers of Other Languages.

13. In November-December, 2007, Plaintiff Laura Nieto privately retained neuropsychologist Vincent Culotta, Ph.D., and speech language pathologist,

Linda Spencer, Ph.D., to conduct independent evaluations of [MTV]'s cognition and speech, respectively.

14. Based on his November 2007 evaluation, Dr. Culotta diagnosed [MTV] with ADHD, Phonological Processing Disorder and Mixed Receptive-Expressive Language Disorder. Based on her evaluation of [MTV] on December 28, 2007, Dr. Spencer determined, among other things, that [MTV]'s articulation and intelligibility was equivalent to a child of 2 years and 3 months, even though he was 4 years and 4 months old at the time.

15. Based on these independent evaluations, Plaintiff Laura Nieto sought more services for [MTV], particularly more speech language services. Consequently, at the following IEP Meetings on April 15 and May 21, 2008 (at the end of [MTV]'s pre-Kindergarten year at Broad Acres), Plaintiff Laura Nieto, Attorney Patrick Hoover, Dr. Culotta and Dr. Spencer all advocated for a stronger IEP Program for [MTV]'s Kindergarten year that would include 90 minutes of weekly speech language services and a more integrated speech language curriculum.

16. At the conclusion of the May 21, 2008 IEP Meeting, the Bayewitz-led MCPS IEP Team rejected providing [MTV] with 90 minutes of weekly speech language services, but did agree to increase such services by 15 minutes for a total of 60 minutes of weekly small group services and to continue ESOL instruction. To the surprise of Plaintiff Laura Nieto and her attorney and experts, the MCPS IEP Team stated at the conclusion of the two-day IEP Meetings that [MTV] would attend Roscoe Nix Elementary for his Kindergarten year in the Fall of 2008, not Broad Acres.

17. During the course of [MTV]'s Kindergarten year at Roscoe Nix (2008-09), [MTV] received two 30 minute sessions of speech language services per week in groups of 4, 5 or 6 students with MCPS speech language pathologist Devon Dee.

18. On May 25, 2009, prior to the next annual IEP Meeting, and at Plaintiff Laura Nieto's request, Dr. Spencer re-evaluated [MTV] to determine, among other things, the amount of progress [MTV] had made in speech articulation and intelligibility at Broad Acres and during his Kindergarten year at Roscoe Nix since her initial evaluation on December 28, 2007. Dr. Spencer determined that [MTV]'s articulation and speech intelligibility was equivalent to a child of 2

years and 9 months, even though he was 5 years and 9 months old at the time. In short, Dr. Spencer determined that [MTV] had progressed only 6 months in terms of speech articulation and intelligibility in 18 months.

19. On May 29, 2009, at the annual IEP Meeting, Plaintiff Laura Nieto, Attorney Patrick Hoover and Dr. Spencer all advocated (based on Dr. Spencer's May 25th evaluation) that [MTV] receive two hours of weekly speech language services with one hour devoted solely to articulation. They also advocated that [MTV]'s IEP Program include an intensive and an integrated speech language curriculum to address [MTV]'s speech disability and eliminate MCPS's focus on ESOL instruction.

20. During the course of the IEP Meeting, members of the MCPS Team agreed that [MTV] suffered from a speech disability, and not merely a delay in speech development. According to the written IEP drafted by MCPS speech language pathologist Devon Dee, [MTV]'s speech-language "impairment affects his ability to express himself with age-appropriate articulation and intelligibility, process information, grasp new vocabulary/concepts, answer questions, and formulate responses orally or in writing." Individual Education Program of [MTV] dated May 29, 2009, p. 6. MCPS speech language pathologist Devon Dee further reported that [MTV]'s speech impairment affects: "linguistic concepts, pragmatics, and reading, math. These deficits impede progress made in the general education curriculum." Id.

21. Notwithstanding Devon Dee's conclusion that [MTV]'s speech disability was adversely impacting his access to the general education curriculum and notwithstanding the greater academic demands that would be placed on [MTV] in the First Grade, the MCPS IEP Team (which included Devon Dee) rejected providing [MTV] with two hours of weekly of speech language services, as requested by Plaintiff Laura Nieto, Attorney Patrick Hoover and Dr. Spencer. Instead, the MCPS IEP Team decided to split up [MTV]'s 60 minutes of weekly speech language services into two weekly 20 minute small group sessions – again consisting of 4, 5, or 6 students – and one 20 minute session in the general classroom setting. Although [MTV] had fallen further behind in speech articulation and intelligibility development relative to his age peers, the MCPS IEP Team reduced the amount of weekly small group speech language services

from what MTV [redacted] had been receiving in his Kindergarten (40 minutes instead of 60 minutes) and pre-Kindergarten (40 minutes instead of 45 minutes) years. The MCPS IEP Team did agree, however, to eliminate ESOL instruction from MTV [redacted]'s IEP and to add a number of hours of weekly special education and resource support.

22. Based on MCPS's decision to reduce the amount of speech language services for MTV [redacted], on August 3, 2009, Plaintiff Laura Nieto filed a request for a Due Process Hearing under the IDEA, contesting MCPS's proposed IEP and seeking, among other things, that MCPS provide MTV [redacted] with two hours of weekly speech language services, one-on-one sessions with a licensed speech language pathologist, and a more intensive, integrated speech language program imbued throughout MTV [redacted]'s academic curriculum.

23. Following an unsuccessful attempt at resolving the issues through mediation on August 24, 2009, a Due Process Hearing was scheduled before Administrative Law Judge A.E. Rojugbokan on September 29, 2009.

24. On or about September 16, 2009, Plaintiff Laura Nieto suffered a stroke. Based on her treating physician's advice, Attorney Patrick Hoover requested a postponement of the Due Process Hearing until mid-October. The ALJ denied the request.

25. The parties proceeded to the Due Process Hearing as scheduled on September 29, 2009. Although predicted to take four days to complete (from September 29 through October 2), the Hearing took place over 14 days (September 29-30; October 1-2, 15, 19, 20; November 9, 11, 20, 23-24; December 1, 10), testimony was taken from 10 witnesses and 4,504 pages of transcripts were generated.

26. During the Hearing, the ALJ heard testimony from both sides on several issues, including whether MTV [redacted] was "bi-lingual" and whether Plaintiff Laura Nieto's Spanish-influenced English impeded MTV [redacted]'s speech language development. While no witness claimed that MTV [redacted] could speak Spanish, the three MCPS speech language pathologists who testified for Defendant MCPS maintained that MTV [redacted] was bi-lingual because he could understand Spanish.

27. In support of her testimony that MTV [redacted] understood Spanish, MCPS speech language pathologist Laura Fuentes testified that on October 19, 2009, during the course of the Hearing, she traveled from Broad Acres to Roscoe Nix to interview

[MTV] at the request or direction of MCPS attorney Jeffrey Krew. Although Laura Fuentes had not been involved in [MTV]'s education in the 18 months since [MTV] left Broad Acres, she met with and digitally recorded her interview with [MTV] without the knowledge or consent of his Guardian, Plaintiff Laura Nieto, in violation of Md. Code Ann., Courts and Judicial Proceedings 10-402(a), and Plaintiffs' rights under the IDEA.

28. Laura Fuentes testified that during the course of her October 19th interview with [MTV], he understood the Spanish words she used and offered an edited and partial transcript of their conversation. Over the objection of Plaintiffs' attorney, the ALJ admitted the edited and partial transcript into evidence and cutoff further cross examination, even though Laura Fuentes ultimately admitted that she had erased or taped over the digital recording of the October 19th interview.

29. Unable to cross examine Laura Fuentes effectively on her testimony or challenge the accuracy of her edited transcript without the recording of the October 19th interview, Plaintiffs' attorney filed an "Expedited Emergency Motion For Production of Recording Referenced in Fuentes' Testimony And Edited Transcript Or In The Alternative, Motion to Strike Fuentes' Testimony." The ALJ denied the Motion.

30. On the question of whether Plaintiff Laura Nieto's Spanish-influenced English impeded [MTV]'s speech language development, all three MCPS speech language pathologist witnesses testified, to varying degree, that Plaintiff Laura Nieto's speech adversely affected [MTV]'s articulation and speech development. However, none of MCPS's witnesses could distinguish or explain how or why MCPS speech language pathologist Laura Fuentes's Spanish-influenced English did not also adversely impact [MTV]'s speech development while he attended Broad Acres.

31. By contrast, Dr. Spencer testified that [MTV]'s articulation errors and speech pattern were consistent with MCPS's own finding that he suffered from a speech disability and noted (as did other witnesses) that other children in [MTV]'s family who were also heavily exposed to Plaintiff Laura Nieto's speech, including [MTV]'s half-sister, were unaffected by her speech. The ALJ ignored the testimony of Dr. Spencer and Plaintiffs' other witnesses and, instead, credited Laura Fuentes's testimony in every respect.

32. At the Hearing, extensive testimony was taken with respect to the adequacy of the 2008 and 2009 year-end IEPs and MTV's speech language progress under them. All three MCPS speech language pathologist witnesses testified that the speech and language goals and objectives in MTV's IEPs were adequate; that MTV showed measurable and meaningful progress during his Pre-Kindergarten and Kindergarten years; and that he was continuing to make good progress in the First Grade.

33. By contrast, Dr. Spencer testified that her formal evaluations of December 28, 2007 and May 25, 2009 showed lack of adequate progress in speech articulation and intelligibility by any measure. In support of her testimony, Dr. Spencer submitted the results of her two formal evaluations – known as the Goldman-Fristoe Test of Articulation ("GFTA") – which illustrated that MTV had fallen further behind relative to his age-peers. Dr. Spencer also presented a number of short videotapes she had taken of MTV on May 25, 2009 and September 9, 2009, which dramatically documented MTV's unintelligibility for a child of three years, even though MTV was six years old.

34. Although Defendant MCPS had been aware and in possession of Dr. Spencer's GFTA evaluations since early 2008, and had never bothered to conduct any such formal evaluations of their own at any time, MCPS's counsel at the Hearing, both on cross examination of Dr. Spencer and through his three MCPS speech language pathologist witnesses, pointed out a few computational errors in Dr. Spencer's GFTA reports. Dr. Spencer noted, however, that none of the computational errors were statistically significant or affected her finding that MTV's speech articulation and intelligibility were of a child less than half his age.

35. Another area of contention that elicited substantial testimony at the Hearing concerned the question of whether MTV's speech disability was impacting his ability to access the general education curriculum – a critical question in terms of whether Defendant MCPS was providing MTV with a FAPE.

36. During Dr. Spencer's direct testimony, Plaintiffs' counsel attempted to elicit opinion testimony from her about how MTV's speech disability would adversely impact his ability to access the general education curriculum. MCPS counsel objected on the grounds that Dr. Spencer was not qualified to provide

such an opinion, since she was only a speech language pathologist and not an educational expert. Even though MCPS speech language pathologist Devon Dee had specifically noted in the May 29, 2009 IEP that MTV's speech disability "impede[d] progress made in the general education curriculum," the ALJ sustained the objection and barred any testimony from Dr. Spencer on this point. See Individual Education Program of MTV, dated May 29, 2009, p. 6.

37. Given the ALJ's ruling, Plaintiffs' counsel sought to call Richard Weinfeld, an educational expert, to testify as to the adverse impact that MTV's speech disability was having on his ability to access the educational curriculum. MCPS's counsel, who had previously barred Mr. Weinfeld from observing MTV in the classroom, objected on the grounds that Plaintiffs' counsel had failed to identify Mr. Weinfeld as witness at least 5 days before the start of the Hearing on September 29th. Although it was within the ALJ's discretion to allow testimony by a witness who had not been identified 5 days before the commencement of the Hearing (especially where, as here, the Hearing is protracted over several months), ALJ Rojugbokan sustained the objection and barred Mr. Weinfeld from testifying on Plaintiffs' case-in-chief.

38. After all three MCPS speech language pathologist witnesses testified that MTV's speech disability was not adversely impacting his ability to access the general education curriculum – in some cases after the ALJ had overruled Plaintiffs' counsel objection that they were no more qualified to opine on the subject than Dr. Spencer – Plaintiffs' counsel sought to call Richard Weinfeld to offer rebuttal testimony on this point. Despite the fact that Defendant MCPS had "opened the door" by eliciting opinion testimony from its speech language pathologist witnesses concerning educational impact, MCPS counsel objected to any testimony from Mr. Weinfeld, even on rebuttal, again because he had not been identified as a witness prior to September 29th. Even though it was not possible to identify rebuttal witnesses before the commencement of the Hearing, the ALJ sustained the objection and barred Plaintiffs' counsel from calling Mr. Weinfeld on rebuttal.

39. In addition to being permitted to testify about educational impact, MCPS speech language pathologist witnesses Devon Dee and Jill Brahm, Ph.D., were also given

free reign to testify about the progress [MTV] had been making in the current 2009-10 school year, as evidenced by the IEP Progress Report for the 1st Quarter. Plaintiffs' counsel, however, was barred from cross examining MCPS speech language pathologist Jill Brahm on [MTV]'s lack of academic progress, as evidenced by his Academic Report Card for the 1st Quarter, on the grounds that she could not authenticate the Report Card from Roscoe Nix.

40. When Plaintiffs' counsel then attempted to recall Plaintiff Laura Nieto on rebuttal for the sole purpose of authenticating the Report Card that she received from Roscoe Nix, the ALJ barred Plaintiff Laura Nieto from testifying, thereby precluding any documentary evidence of adverse educational impact from entering the Record.

41. In excluding evidence of adverse educational impact caused by [MTV]'s speech disability, the ALJ also excluded evidence of the kind educational program that would allow [MTV] to obtain a "Free and Appropriate Public Education," including evidence that such a program would require that he be placed in a private school with an intensive and integrated speech and language program imbued throughout the educational curriculum.

42. In addition to barring testimony from Richard Weinfeld on the Plaintiffs' case-in-chief and on rebuttal, and barring Plaintiff Laura Nieto from introducing [MTV]'s 1st Quarter Academic Report Card on rebuttal, the ALJ also (1) barred Dr. Spencer on rebuttal from providing (a) any kind of documentary evidence of academic impact, or (b) evidence of lack of speech development progress since the commencement of the Hearing, even though she had accorded Defendant MCPS the opportunity to do so; (2) barred Dr. Vincent Culotta from testifying on re-direct because of a scheduling delay and mix-up that was precipitated when Plaintiffs' counsel ruptured his achilles tendon during the Hearing; and (3) routinely limited cross examination of witnesses by applying the peculiar rule that the cross examination of a witness could not exceed half the time the witness spent on direct examination.

43. Based on the ALJ's evidentiary rulings, particularly her rulings excluding evidence of adverse educational impact, and thereby, evidence of the nature of an appropriate educational program for [MTV], the ALJ granted Defendant MCPS's counsel motion at the end of Defendant MCPS's case to deny any request for

relief providing [MTV] with private school placement, and reserved on the question of whether Defendant MCPS had denied Michael FAPE.

44. On January 14, 2010, the ALJ issued the Due Process Hearing Decision and found that Plaintiffs did not meet their burden of proving that Defendant MCPS denied [MTV] FAPE.

45. The Hearing Decision contains numerous errors of law and fact. Among the errors was a finding that [MTV] was "bi-lingual" because he "understood Spanish." However, in making this finding, the ALJ relied on the testimony of MCPS speech language pathologist Laura Fuentes and her edited and partial transcript of her interview with Michael on October 19th – evidence based on a digital recording that was obtained in violation of law and that was neither preserved nor provided to Plaintiffs' counsel as required by the rules of discovery. The ALJ ignored Defendant MCPS's illegal and unethical conduct and accepted Defendant MCPS's "evidence" without criticism.

46. The ALJ's erroneous finding that [MTV] was bi-lingual compounded and led to further errors, including her finding that [MTV]'s articulation was influenced by Plaintiff Laura Nieto's (but not Laura Fuentes's) Spanish-influenced English. The ALJ's erroneous finding in this regard, in turn, led her to the erroneous finding that Dr. Spencer's December 28, 2007 and May 25, 2009 GFTA conclusions were flawed because they did not take into account articulation errors influenced by Spanish.

47. The ALJ also erroneously found that [MTV] was receiving 60 minutes of weekly small group speech language services in the First Grade, even though Defendant MCPS's speech language pathologist Devon Dee testified that [MTV] was only receiving two 20 minute blocks of small group speech language service per week.

48. The ALJ accepted into evidence the testimony of Defendant MCPS's speech language pathologist witnesses that [MTV] had been making meaningful progress under his IEP, but ignored Dr. Spencer's videotape evidence that plainly and compellingly refuted any notion of real speech language progress since [MTV]'s pre-Kindergarten year.

49. [MTV] continues to struggle in being understood and often requires a tangible object as a point of reference in order for a listener, particularly an unfamiliar listener, to understand what he is saying.

50. ~~[redacted]~~ MTV continues to get frustrated with not being understood by peers, teachers and family.

51. ~~[redacted]~~ MTV continues to suffer academically as a result of his speech disability, continues to fall further behind his age-peers in all academic subjects and is unable to access the general education curriculum.

## COUNT I

52. Plaintiffs incorporate as though restated herein each of the factual allegations stated in paragraphs 1 through 51.

53. Defendants' failure to provide ~~[redacted]~~ MTV with a free appropriate public education violates Plaintiffs' rights under IDEA, Section 504, Section 1983 and Maryland law.

## COUNT II

54. Plaintiffs incorporate as though restated herein each of the factual allegations stated in paragraphs 1 through 51.

55. The failure of the ALJ to order Defendants to provide ~~[redacted]~~ MTV with at least two hours of weekly one-on-one speech and language services, with at least one hour devoted to speech articulation, from a licensed speech language pathologist, and to place ~~[redacted]~~ MTV in an intensive and integrated speech and language program imbued throughout the educational curriculum, or alternatively, to place ~~[redacted]~~ MTV in a private school with such a program, violates Plaintiffs' rights under the IDEA and Maryland law.

## COUNT III

56. Plaintiffs incorporate as though restated herein each of the factual allegations stated in paragraphs 1 through 51.

57. The ALJ committed error, and violated Plaintiffs' due process rights under the IDEA and Maryland law by admitting into, and relying upon, evidence that was obtained in violation of Md. Code. Ann., Courts and Judicial Proceedings 10-402(a).

## COUNT IV

58. Plaintiffs incorporate as though restated herein each of the factual allegations stated in paragraphs 1 through 51.

59. The ALJ committed error, and violated Plaintiffs' due process rights under the IDEA and Maryland law by excluding relevant, probative and admissible evidence and testimony offered by Plaintiffs.

## COUNT V

60. Plaintiffs incorporate as though restated herein each of the factual allegations stated in paragraphs 1 through 51.
61. The failure of Defendants to provide Plaintiffs with adequate due process procedures violates the IDEA, Section 504, Section 1983 and Maryland law.

## COUNT VI

62. Plaintiffs incorporate as though restated herein each of the factual allegations stated in paragraphs 1 through 51.
63. The ALJ committed error, and violated Plaintiffs' due process rights under the IDEA and Maryland law, by failing to render a proper decision on all substantive issues presented by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue judgment for Plaintiffs and against Defendants;
2. Issue declaratory relief that Defendants violated Plaintiffs' rights under applicable law;
3. Issue injunctive relief ordering Defendants to provide [MTV] with at least two hours of weekly one-on-one speech and language services, with at least one hour devoted to speech articulation, from a licensed speech language pathologist, and to place [MTV] in an intensive and integrated speech and language program imbued throughout the educational curriculum, or alternatively, to place [MTV] in a private school with such a program;
4. Order Defendants to pay Plaintiffs' reasonable attorney's fees and costs, including the fees and costs of this action; and
5. Award any other relief that this Court deems just.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(Continued Signature Page)

The foregoing Complaint for Declaratory and Injunctive Relief is, on this 11th day of May, 2010, hereby submitted for the Court's consideration and further handling.

*Laura Nieto*

By: Laura Nieto   M T.V.
Guardian of [redacted], Minor Child
9727 Mt. Pisgah Rd
Silver Spring, MD 20903
Telephone: 301.445.5618

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT of Maryland

|  |  |
|---|---|
| ████████████, a minor, | * |
| by his Guardian, Laura Nieto, | * |
| 9297 Mt. Pisgah Rd | * |
| Silver Spring, MD 20903 | * |
| Plaintiffs, | * |
|  | * |
| v. | *   Civil Action No.:_____ |
|  | * |
| Jerry D. WEAST (officially as), | * |
| Superintendent, Montgomery County Public Schools, | * |
| and Montgomery County Board of Education, | * |
| 850 Hungerford Drive | * |
| Rockville, MD 20850 | * |
| Defendants. | * |

## CERTIFICATE OF SERVICE

On this ___11th___ of May, 2010, I hereby certify that a copy of the forgoing Complaint for Declaratory and Injunctive Relief, was served in the matter indicated below upon the following individuals:

1. Jerry D. Weast, Superintendent, Montgomery County Public Schools
   850 Hungerford Drive
   Rockville, MD 20850
   Service was executed through email transmission and a hard copy was sent by US Post, 1st class, postage paid, at the address.

2. Patricia O'Neill, President, Montgomery County Board of Education
   Carver Educational Services
   Center, Room 123
   850 Hungerford Drive
   Rockville, Maryland 20850
   Service was executed through email transmission and a hard copy was sent by US Post, 1st class, postage paid, at the address.

3. Nancy S. Grasmick, State Superintendent of Schools
   Office of State Superintendent
   State Department of Education
   200 West Baltimore Street
   Baltimore, MD
   MD 21201-2595
   Service was executed through email transmission and a hard copy was sent by US Post, 1st class, postage paid, at the address.

4. Jeffrey Krew, Esq.
   Attorney for Montgomery county Public Schools
   4785 Dorsey Hall Drive
   Ellicott City, MD 21042
   Service was executed through email transmission and a hard copy was sent by US Post, 1st class, postage paid, at the address.

By: _____
Deepti S. Sharma
401 N. Washington St., Suite 900
Rockville, MD 20850